HENNINGSEN PRODUCE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11661.   Promulgated April 26, 1928.

*Herbert S. Wood, C. P. A.*, for the petitioner.
*Benton Baker, Esq.*, and *P. J. Mitchell, Esq.*, for the respondent.

OPINION.

LITTLETON: The contention of petitioner is that it " sustained during the taxable year 1919 a substantial loss," $5,460.45, " from the actual payment, after the close of the taxable year 1918, of a rebate in pursuance of a contract entered into during that year, upon a sale made during that year." The statutory provision relied upon is section 234 (a) (14) (a) of the Revenue Act of 1918, providing in part as follows:

At the time of filing return for the taxable year 1918 a taxpayer may file a claim in abatement based on the fact that he has sustained a substantial loss (whether or not actually realized by sale or other disposition) resulting from any material reduction (not due to temporary fluctuation) of the value of the inventory for such taxable year, or *from the actual payment after the close of such taxable year of rebates in pursuance of contracts entered into during such year upon sales made during such year.* * * * If it is shown to the satisfaction of the Commissioner that such substantial loss has been sustained, then in computing the taxes imposed by this title and by Title III the amount of such loss shall be deducted from the net income. (Italics supplied.)

Was the amount paid by petitioner in 1919 on account of the transaction in question a " rebate " as contemplated by the foregoing provision of the statute? While some of the many definitions of the word " rebate " advanced by petitioner are sufficiently broad to include within their meaning any kind of repayment under a contract, we are of the opinion that the results that would follow from such an interpretation were neither intended nor accomplished by the section in question. The Revenue Act of 1918 was enacted February 29, 1919. Congress was here concerned with a situation wherein it was realized that after the close of the World War many taxpayers would have on hand inventories the market value of which was higher than they almost certainly would be in the period immediately following the war. When income was determined for 1918 by the use of such inventories, it was evident that such income would not be realized if such goods were sold subsequent to 1918 at prices lower than then prevailing. Provision was accordingly made to afford taxpayers a measure of relief from such " price declines " by permitting them to readjust the taxable income for 1918 when it had subsequently been determined that a substantial loss had been sustained on account of such inventories. This was a remedial measure enacted apparently on account of market conditions. To accomplish the result intended, it was provided that losses should be allowed not only on account of material reductions after the close of the taxable year 1918 of the values of inventories for such taxable year, but also from actual payments after the close of the taxable year 1918 of rebates in pursuance of contracts entered into during such year upon sales made during such year.

The contention advanced by petitioner is that when, after the close of 1918, it made a repayment of the entire amount realized on the sale in 1918 due to serious defect in the quality of the eggs, this was a " rebate " as contemplated by the provision relied upon, and, accordingly, income for 1918 should be reduced to this extent, even though it was a payment made in pursuance of an agreement warranting only the quality of the goods in question. We can not accept this view. Provisions in contracts warranting the quality of goods are not peculiar to contracts made in 1918, but are common to many classes and kinds of sales contracts constantly being made in regular course of business in all years, and there is no reason to suppose that any greater loss would be suffered subsequent to 1918 on account of such warranty agreements than would be true under normal conditions. When the provision with respect to rebates is read in connection with the entire section of which it is a part, we think the only consistent interpretation that can be given thereto is that Congress had in mind losses of the character which were

similar in kind to those being allowed on account of inventories which had not been sold, but which would result to the taxpayer because the sale had already been made, and provision was made in the sales contract which would require an adjustment of the sales price. The loss allowable on account of inventories on hand was due to a decline in market prices and we are of the opinion that the rebate provision must be limited to a similar condition where at the close of 1918 the sales had already been made, but there existed in such contracts a provision whereby in case of decline in prices the taxpayer would be required to allow a rebate of a part of the original sales price. In this manner, both the taxpayers who had their goods, but would suffer losses on account of price decline, and the taxpayers who had sold, but would likewise suffer from price decline, were permitted the same kind of relief.

In the reply brief submitted by petitioner the contention is advanced that there was, in this instance, a rescission of the sale and that for this reason the income for 1918 should be reduced by the entire amount of the sales price. There was no allegation in the petition of a rescission, nor do we consider the evidence sufficient to show that this was what happened. The most that can be said is that the petitioner paid back to the original vendee the amount which had been paid on account of the sale, and also abandoned the eggs which had been shipped. Whether this was done in the nature of a rescission, or as a result of some other kind of adjustment of the liability which the taxpayer incurred under the warranty agreement, we do not know, and, accordingly, will not attempt to say what would be the effect on the 1918 income of such a rescission.

The transaction here in question was admittedly a completely executed sale in 1918 when the eggs were delivered and the full sales price paid. At the close of 1918 whatever liability existed under the warranty agreement was so contingent in character that it could not have been set up as an accrual and taken as a deduction from gross income, and it was not until in 1919 that it was found that there was a loss. The Commissioner has allowed the loss as a deduction in 1919, and we find no reason in the statute on the evidence presented to disturb his action.

*Judgment will be entered for the respondent.*